THE GRABLER MANUFACTURING CO., APPELLANT, v. KOSYDAR, TAX COMMR., APPELLEE.

(No. 74-777—Decided July 9, 1975.)

76

*Messrs. Glander, Brant, Ledman & Newman, Mr. C. Emory Glander* and *Mr. James H. Ledman*, for appellant.

*Mr. William J. Brown*, attorney general, and *Mr. John C. Duffy, Jr.*, for appellee.

CELEBREZZE, J. The issue before the court, as it was before the Tax Commissioner and the Board of Tax Appeals, is the proper determination of the "true value in

money" of the personal property sold by Grabler to Hayes-Albion and Acme.

R. C. 5711.18, in pertinent part, provides:

"* * * In the case of personal property used in business, the book value thereof less depreciation at such time shall be listed, and such depreciated book value shall be taken as the true value of such property, unless the assessor finds that such depreciated book value is greater or less than the then true value of such property in money. * * *"

The Tax Commissioner (assessor) found that the book value, minus depreciation, was the true value of the property. However, appellant argues that the sale price should be used, and that failure to use the sale price as value is unreasonable and unlawful.

In *State, ex rel. Park Investment Co., v. Bd. of Tax Appeals* (1964), 175 Ohio St. 410, 412, this court determined that:

"* * * The best method of determining value, when such information is available, is an actual sale of such property between one who is willing to sell but not compelled to do so and one who is willing to buy but not compelled to do so. Paragraph two of the syllabus in *In re Estate of Sears*, 172 Ohio St. 443, 178 N. E. (2d), 240. This without question, will usually determine the monetary value of the property. * * *"

The Board of Tax Appeals attempted to distinguish that statement, since *Park Investment* is a real property case. However, *Sears* is a personal property case, and the logic extends to personal property.

From the record, it is clear that Commercial Credit Company wanted very much to sell Grabler. Commercial Credit Management Company carried out vigorous negotiations, covering the better part of 15 months in selecting 20 to 25 possible purchasers from several hundred potential purchasers. Several offers were made before the Hayes-Albion offer was accepted. The record shows that these parties dealt at arms-length. In addition, an adequate effort was made to market the equipment and machinery which was not purchased by Hayes-Albion before Acme's offer

was accepted. These were transactions fulfilling the requirements of *Park Investment, supra.*

The Board of Tax Appeals, however, reaches the opposite result because:

"* * * Grabler was the owner of the equipment in question, yet no one from the corporaton participated in the negotiations. Moreover, Grabler *had no choice* but to sell its assets owing to the fact that Commercial Credit Corporation was looking for a buyer of the equipment which Grabler leased from it. * * *" (Emphasis added.)

Of course Grabler had no choice, it was a wholly owned subsidiary, and Commercial Credit Company had decided to sell it. But from a taxation standpoint, Grabler must be considered a willing seller when we consider its parent organization to be a willing seller. From the evidence, we do consider these sales to be between a willing buyer and seller.

The Tax Commssioner argues that the evidence of these sales was not available on tax listing day, so that it was not unreasonable for the assessor to use depreciated book value for the true value.

Since this court has determined that a sale between a willing buyer and seller is the best evidence of true value, the question becomes whether the sales in question were, in time and crcumstances surrounding them, the best evidence of true value in this case. We believe that they were. There is no evidence in the record to show a change in circumstances from December 31, 1968, until March 31 and May 16, 1969, to justify a departure from our rule, and sales within that period of time after tax listing day, December 31, 1968, seem to be within a reasonable time.

For the foregoing reasons, the decision of the Board of Tax Appeals is unreasonable and unlawful, and we reverse.

*Decision reversed.*

O'Neill, C. J., Herbert, Corrigan, Stern and W. Brown. JJ., concur.

P. Brown, J., dissents.